[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This habeas corpus petitioner alleges ineffective assistance of counsel in the course of his being prosecuted on several criminal charges.
The principal offense charged was an Assault in the First, Degree in which the victim was shot with a handgun, the bullet lodging close to his spinal column.
The petitioner's testimony and the evidence is remarkable for the extent to which the allegations of ineffective assistance are contradicted. The court will address these matters first.
 I
In paragraph 2 of the petition, it is alleged that the petitioner relied upon the advice of counsel that his sentence would not be more than 5 years. In actuality, he received a total effective sentence of 15 years, suspended after 10 and 3 years probation. The assault charge carried a mandatory minimum of 5 CT Page 1673 years and the petitioner was a convicted felon.
Under cross examination, the petitioner admitted that he had received no guarantee and there was no sentence agreed upon. The transcript of his change of plea, Exhibit 2, bears this out and indicates a detailed plea canvass in which the petitioner participated fully, even telling the court what the sentence ranges were for the charges to which he had pleaded.
Of particular note is his admission that he had been promised no particular sentence, that he understood the proceedings and was satisfied with his lawyer's efforts.
At trial, the petitioner testified that his answers to the judge who canvassed his pleas were not truthful. After his prior admission that he was not promised any particular sentence, one is left to conjecture as to his motive in deceiving the judge and why that entitles him to relief.
 II
The petitioner also alleges trial counsel failed to "challenge the accuracy of the erroneous information introduced at the sentence hearing and failed to introduce facts to counter" the same.
This allegation ignores the predicament in which the petitioner placed counsel — and himself — when he wrote a letter from the correctional center and that letter was intercepted by corrections personnel.
Replete with racist overtones and exhortations to the recipient to "influence" the witnesses against him, it is virtually a full confession of the crimes charged. (Counsel is also criticized for not suppressing this item. That criticism deserves no further comment).
Of particular significance in this letter is the statement that "I got it where the courts think it was someone else." This would seem to contradict the petitioner's assertion that he had never told his attorney to argue "that someone else did it."
The petitioner is critical of the fact that the sentencing court did not know on the sentencing date that the lead slug had been removed from the victim's spinal column. He blames both his CT Page 1674 counsel and the prosecutor for this error.
This court cannot imagine how this bit of information would influence a judge to extend leniency to the person who put the bullet there in the first place. Actually, the fact that the removal was dictated by a medical emergency would in all likelihood have the opposite effect.
At any rate, the petitioner has not demonstrated that this detail was prejudicial to him.
The court can find no "erroneous information" which counsel neglected to rebut.
 III
As to the allegation that counsel failed to investigate the charges and seek discovery, the petitioner presented no evidence to support this allegation, save for the information about the surgically removed slug which the court has discussed.
 IV
The allegation in paragraph 5 is that counsel failed to explain the elements of the offenses so that the petitioner could make an informed voluntary decision to plead.
This claim is readily rebutted by reference to Exhibit 2, where even after the petitioner indicates to the court that counsel has explained the elements of the offenses, the court goes into the elements of the charges in detail.
 V
Though not specifically included in his petition, the petitioner has recited to the court several other instances of alleged misfeasance by his counsel.
Repeated in oral argument is the claim of counsel's failure to investigate. However, no evidence was offered to show what would have been uncovered that was not already known. The total weakness to this claim is demonstrated again by Exhibit 5, the petitioner's ill advised letter from the jail. It is clear from the petitioner's own words that the state had witnesses who would support the charges. The petitioner points this out and never CT Page 1675 suggests they are lying, but rather wants them to lie.
The petitioner also claimed on the stand that his attorney did not explain to him that he would lose the state's offer of a recommended 9 year sentence to serve.
Transcripts of September 23, 1996 (Exhibit 1) and September 24 (Exhibit 2) conclusively demonstrate that this petitioner was aware of what he was doing, that he participated fully in the decision to change his plea, and that his actions were free and voluntary with a full understanding of the consequences.
For example, his now maligned counsel in addressing the court on September 23, interjects in an aside ". . . stop me if I'm — if you change your mind — but my understanding is that we're turning down the State's offer and we're going to go forward on trial."
This elicited the following from the prosecuting attorney:
 "I'd also indicate for the record, Your Honor, that as of this point we have discussed this case at great length over a substantial period of time both with Mr. Fisher and with Mr. Johnson's prior counsel, and — and at this point it would be the State's position that we're no longer going to entertain any proposals for disposition short of a jury verdict unless it is Mr. Johnson pleading guilty to all these counts with no agreed recommendation."
Finally, the court will address the petitioner's grievances about counsel at sentencing. There, he claims, counsel didn't argue the shooting was accidental — the one the petitioner did not commit! Nor did he point out that the petitioner had been drinking and that the lighting was poor so his identification was questionable.
These points might have been useful — at a trial. But the petitioner had already pleaded guilty under the Alford Doctrine which states his position to be that he neither admits nor denies the commission of the act but is pleading guilty because he believes he'll be convicted at a trial and this is his best course of action under the circumstances.
Counsel is also accused of ineffective assistance because he neglected to "negotiate a better plea." This claim pre-supposes CT Page 1676 he had total control of the plea — bargaining process. This is a totally frivolous claim and is dismissed as an afterthought.
 CONCLUSION
The petitioner has not proved he was the victim of ineffective assistance of counsel, and the petition is therefore denied and dismissed.
___________________________ Anthony V. DeMayo Judge Trial Referee